```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

```
UNITED STATES OF AMERICA      :
                              :
                              :       Case No. 2:11-cr-97
        v.                    :
                              :
                              :
CORY LOTT,                    :
                              :
              Defendant.      :
```

**Memorandum Opinion & Order:**
**Defendant's Motions for a Bill of Particulars and**
**to Dismiss the Indictment**

Defendant Cory Lott is charged with knowing failure to register and update his registration as a sex offender in Vermont, in violation of the Sex Offender Registration and Notification Act ("SORNA" or the "Act"), 18 U.S.C. § 2250(a).[1] Indictment, ECF No. 3. Lott's obligation to register allegedly arose from a 2001 conviction in New York for sexual abuse in the second degree. *See* Aff. of Michael Barron, Crim. Compl. Attach. 1 ("Barron Aff."), at 1-2, ECF No. 1-1. Lott has filed a Motion

---

[1] SORNA was enacted on July 27, 2006 as Title I of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (codified at 42 U.S.C. §§ 16901 *et seq.*, 18 U.S.C. § 2250(a)). Congress was motivated by the concern that many sex offenders had been able to evade state registration requirements through interstate travel. *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 483 (2010). It thus sought to establish a "comprehensive national registration system." *Id.*

to Dismiss the Indictment and a Motion for a Bill of Particulars, ECF Nos. 23-24, both of which the government opposed. For the reasons described below, the Court **denies** Lott's motions.

## Discussion

### I. Motion for a Bill of Particulars

Lott moves under Federal Rule of Criminal Procedure 7(f) for the government to produce a bill of particulars that contains the addresses at which the government believes Lott resided in Vermont, and the dates during which he allegedly lived in those locations. The Court may grant a bill of particulars within its "sound discretion." *United States v. Hunter*, 13 F. Supp. 2d 586, 590 (D. Vt. 1998). A bill of particulars' function is to allow the defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). If a bill of particulars is ordered, it may incidentally require the government to reveal details of its evidence or theories of the case. *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998). However, "[t]he Second Circuit has emphasized that

2

disclosure of evidentiary detail is not the function of a bill of particulars," nor is it "available to compel the government to disclose its legal theory or the details of how it intends to prove the charges." *Hunter*, 13 F. Supp. 2d at 590. Moreover, a bill of particulars is unnecessary "if the information sought by defendant is provided in the indictment or in some acceptable alternate form." *Bortnovsky*, 820 F.2d at 574.

In this case, the indictment provides that:

> Beginning on a date unknown but before September 2010, and continuing until December 2010, in the District of Vermont and elsewhere, the defendant, CORY LOTT, a person required to register under the Sex Offender Registration and Notification Act, having traveled in interstate commerce, did knowingly fail to register, and update his registration, as a sex offender.

It thus specifies the general dates during which the offense is alleged to have taken place, and makes a broad allegation as to where it took place. To further clarify the general nature of its case, the government provided Lott with grand jury testimony against him, including from his ex-girlfriend, Tabitha McDonald, describing when and where Lott lived during the charged period. *See also* Barron Aff. 3-4 (reporting McDonald's statement that she and Lott began dating in Vermont in September 2010, while he was already living in the state, and claiming that he remained in Vermont until late December 2010). The government has also disclosed that it has police records that indicate that Lott was

3

present in the state between September and December 2010. Barron Aff. 3-4. While not exhaustive, the information the government has disclosed thus far is sufficient to apprise Lott of the government's charges, permit him to prepare for trial, and allow him to raise a defense of double jeopardy.

**II. Motion to Dismiss**

Among Lott's arguments for dismissing the indictment are that SORNA violates the Constitution's: Ex Post Facto Clause; Commerce Clause; Tenth Amendment; and non-delegation doctrine. He also argues that he cannot be charged under SORNA for failing to register in Vermont because Vermont has yet to implement the Act. As he acknowledges, each of those arguments is expressly foreclosed by Second Circuit case law. *United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010) (rejecting Ex Post Facto Clause, Commerce Clause, Tenth Amendment, non-delegation doctrine, and failure to implement arguments), *cert. denied*, 130 S. Ct. 3487 (2010).[2] It is therefore sufficient to note that those claims

---

[2] Nor is this the first time this Court has reviewed and denied a motion to dismiss a SORNA indictment raising some of the same arguments. *See United States v. Mee*, No. 5:11-cr-101, 2012 WL 1638436 (D. Vt. May 9, 2012); *United States v. Harrison*, No. 2:08-cr-103, 2009 WL 975381 (D. Vt. Apr. 10, 2009), *aff'd by summary order*, 399 F. App'x 621 (2d Cir. 2010); *United States v. Barrett*, No. 1:08-cr-127, 2009 WL 1457022 (D. Vt. May 20, 2009), *aff'd by summary order*, 399 F. App'x 629 (2d Cir. 2010).

are precluded by binding precedent and cannot form the basis for dismissing the indictment.

Lott makes two additional claims. First, he contends SORNA's use of the term "resides," in defining when a sex offender is required to register, is unconstitutionally vague as applied to a person with his intermittent term of residency in Vermont.[3] Lott also argues that, at the time of his alleged failure to register, SORNA's registration requirement did not validly apply to those who, like him, committed their underlying sex offense prior to the Act.

A. <u>Vagueness</u>

Lott first argues that SORNA's use of the term "resides" is vague as applied to him, failing to give him adequate notice of a requirement to register in Vermont. SORNA requires a "sex offender," defined in 42 U.S.C. § 16911, to "register, and keep the registration current, in each jurisdiction where the offender *resides*, where the offender is an employee, and where the offender is a student." *Id*. § 16913(a) (emphasis added).

---

[3] Relatedly, Lott argues that venue is improper in the District of Vermont. The indictment properly alleges venue on its face, rendering his objection premature on a motion to dismiss. *United States v. Miller*, No. 2:11-cr-161-1, 2012 WL 1435310, at *4 (D. Vt. Apr. 25, 2012). At trial, the government will have the burden to prove by a preponderance of the evidence that venue exists in this Court, and Lott may renew his argument at the close of the government's case. *Id*. at *5.

5

"Resides" is further defined to mean "with respect to an individual, the location of the individual's home or other place where the individual habitually lives." *Id.* § 16911(13). Lott argues that he did not have a "home" in Vermont during the time alleged in the indictment. Rather, he states that the evidence at trial will demonstrate he merely travelled to Vermont and lived in the state intermittently between September and December 2010.

Even if the facts are as Lott suggests, the alternative formulation of "other place where the individual habitually lives," is sufficiently clear to have given him notice of whether his conduct was prohibited by the Act. A criminal statute violates the Due Process Clause, and is void for vagueness, if it is not defined "'[1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010) (*Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). As the Supreme Court has noted even regarding the stringent vagueness review of statutes that impinge on the First Amendment, "'perfect clarity and precise guidance have never been required.'" *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781,

794 (1989)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language.").

Exercising the power to "issue guidelines and regulations to interpret and implement" SORNA, 42 U.S.C. § 16912(b), the Attorney General has further defined the meaning of "resides." *See* Nat'l Guidelines for Sex Offender Registration and Notification (the "SMART Guidelines"), 73 Fed. Reg. 38030-01, 38061-62 (July 2, 2008). The SMART Guidelines acknowledge that "'habitually lives' in this context is not self-explanatory and requires further definition." *Id.* at 38061.

To avoid an overly narrow definition that would defeat the Act's purpose of achieving comprehensive national registration of sex offenders, "'habitually lives'" encompasses "places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons." *Id.* at 38061-62; *see also Van Buren*, 599 F.3d at 175 (finding an obligation to register when a sex offender terminates his present residence, even before establishing a new one). The SMART Guidelines describe that registration is required even if the sex offender does not have a "fixed abode." *Id.*; *see United*

7

*States v. Voice,* 622 F.3d 870, 874-75 (8th Cir. 2010) (holding defendant changed his residence when he left a halfway house in one town and lived in another area for around two months, first staying at a friend's home and then living at a comfort station). They also place a temporal minimum of thirty days on the time required to establish residence. 73 Fed. Reg. at 38062. "Hence, a sex offender resides in a jurisdiction for purposes of SORNA if the sex offender has a home in the jurisdiction, or if the sex offender lives in the jurisdiction for at least 30 days." *Id.* While the SMART Guidelines note that "jurisdictions in their discretion may require registration more broadly (for example, based on presence in the jurisdiction for a period shorter than 30 days)," they focus consistently on the thirty day example. *Id.*[4]

Few cases have dealt with whether key terms in SORNA withstand vagueness review. However, in *United States v. Bruffy*, the Fourth Circuit rejected the defendant's contention that "resides" was vague as applied to him. No. 10-5007, 2012 WL 503808 (4th Cir. Feb. 16, 2012) (unpublished decision). The

---

[4] The thirty day threshold, the SMART Guidelines make clear, does not mean a sex offender can wait for thirty days to pass before registering with the authorities in a new jurisdiction. *Id.* Rather, he still must register within three business days of the change of the residence. *Id.; see* 42 U.S.C. § 16913(c).

8

defendant, Bruffy, left his home in Florida for a town in northern Virginia. *Id.* at *1. For the most part, he spent the next month living in the Virginia town, in his friend's apartment, his car, and other locations. *Id.* at *1-2. At the same time, however, he sought a permanent job in Maryland and spoke of eventually living in Maryland or Pennsylvania. *Id.* The majority and Judge Gregory, who concurred in part and dissented in part, disagreed as to whether the defendant in fact resided in Virginia, but both determined that "resides," as explicated by "habitually lives," provided clear standards for making that determination in Bruffy's case. *Id.* at *5, 7 & n.*.

The Court finds "habitually lives" also gives adequate guidance to a defendant like Lott who describes travelling to and from Vermont during the charged period. The SMART Guidelines make clear that "habitually lives" connotes a wide range of living situations, construing the term broadly to further the purpose of the Act to expand sex offender registration. However, the SMART Guidelines also reduce the scope of the requirement by focusing on a thirty day threshold for converting mere presence in a jurisdiction into habitual living. Further still, the SMART Guidelines specifically describe a situation that may be similar to Lott's:

> For example, consider the case of a sex offender who nominally has his home in one jurisdiction—e.g., he

9

> maintains a mail drop there, or identifies his place
> of residence for legal purposes as his parents' home,
> where he visits occasionally—but he lives most of the
> time with his girlfriend in an adjacent jurisdiction.
> Registration in the nominal home jurisdiction alone in
> such a case would mean that the registration
> information is not informative as to where the sex
> offender is actually residing, and hence would not
> fulfill the public safety objectives of tracking sex
> offenders' whereabouts following their release into
> the community.

73 Fed. Reg. at 38061-62; *cf. United States v. Wakefield*, No. 09-cr-114, 2009 WL 3335597, at *3 (W.D. La. Oct. 14, 2009) (finding analogous Louisiana registration statute's use of "residence" not vague in application to a defendant who had lived with his girlfriend in Louisiana for three months). Those standards provide clear frames of reference for determining when registration is required under the Act as applied to Lott's case. The Court finds that "resides" is not vague in the present context.

  B. SORNA Applicability

Lott's final claim is that at the time he was charged, the Act's registration provisions did not apply to those, like him, who committed an underlying sex offense prior to SORNA's passage in July 2006. In *Reynolds v. United States*, the Supreme Court held that SORNA delegated to the Attorney General the power to determine whether SORNA's registration provisions apply to pre-Act sex offenders. 132 S. Ct. 975, 984 (2012); *see* 42 U.S.C. §

16913(d). It thus abrogated the Second Circuit's prior determination that the registration provisions applied to pre-Act sex offenders by the statute's own force. *See United States v. Fuller,* 627 F.3d 499, 507 (2d Cir. 2010), *vacated by* 132 S. Ct. 1534 (2012).[5]

The Attorney General has taken three successive regulatory actions that each arguably validly exercised his authority to apply the Act's provisions to pre-Act offenders. In February 2007, he issued an interim rule so stating. Applicability of the Sex Offender Registration and Notification Act (the "Interim Rule"), 72 Fed. Reg. 8894-01 (codified at 28 C.F.R. § 72 (2007)). In issuing that rule, the Attorney General claimed a waiver from the Administrative Procedure Act's notice and comment and publication requirements, under 5 U.S.C. § 553's "good cause" exception. 72 Fed. Reg. at 8896. Secondly, the Attorney General issued the aforementioned SMART Guidelines, whose effective date was July 2, 2008, after opportunity for notice and comment. 73 Fed. Reg. 38030-01. The third step, effective January 28, 2011, was an administrative decision that

---

[5] The First, Third, Eighth, and Tenth Circuits' approaches had been similar to the Second Circuit's. *See United States v. DiTomasso*, 621 F.3d 17, 25 (1st Cir. 2010); *United States v. Shenandoah,* 595 F.3d 151, 163 (3d Cir. 2010); *United States v. May*, 535 F.3d 912, 918–19 (8th Cir. 2008); *United States v. Hinckley*, 550 F.3d 926, 932 (10th Cir. 2008).

finalized the Interim Rule after complying with standard requirements under the Administrative Procedure Act. Applicability of the Sex Offender Registration and Notification Act (the "Final Rule"), 75 Fed. Reg. 81849-01 (codified at 28 C.F.R. § 72 (2011)).

In *Reynolds*, the Supreme Court did not reach the question of whether, in the Interim Rule, the Attorney General validly exercised his statutory authority to extend SORNA registration to pre-Act sex offenders. 132 S. Ct. at 984. However, the 2008 SMART Guidelines mark the latest point at which any Circuit to address the question has found SORNA to apply to pre-Act sex offenders. *United States v. Stevenson*, 676 F.3d 557, 561 n.2, 562 (6th Cir. 2012) (collecting circuit and district court cases and holding that SORNA was validly made applicable to pre-Act sex offenders on August 1, 2008 by the SMART Guidelines); *see United States v. Valverde,* 628 F.3d 1159, 1169 (9th Cir. 2010) (listing the same effective date in dictum), *cert denied*, 132 S. Ct. 1534 (2012).[6]

---

[6] The Fourth, Seventh, and Eleventh Circuits all hold the earlier Interim Rule was the effective date of SORNA's retroactive application. *United States v. Gould*, 568 F.3d 459, 466 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *United States v. Dixon*, 551 F.3d 578, 585 (7th Cir. 2008), *rev'd on other grounds sub nom.*, *Carr v. United States*, 130 S. Ct. 2229 (2010); *United States v. Dean,* 604 F.3d 1275, 1282 (11th Cir 2008), *cert. denied*, 131 S. Ct. 642 (2010). The Fifth

Here, the indictment charges Lott with violating SORNA by failing to register between approximately September 2010 and December 2010, two years after the SMART Guidelines took effect. In light of the apparently unanimous authority that SORNA applied to Lott prior to his alleged offense, the Court finds that his challenge on administrative law grounds does not succeed either. *Mee*, 2012 WL 1638436, at * 6.

For the foregoing reasons, Lott's Motion for a Bill of Particulars and Motion to Dismiss the Indictment are denied.

Dated at Burlington, in the District of Vermont, this 5th day of June, 2012.

<u>/s/William K. Sessions III</u>
William K. Sessions III
U.S. District Court Judge

---

Circuit disagreed with those courts, finding the Interim Rule was not justified by the good cause exception, but nonetheless found the Attorney General's error harmless in the case before it. *United States v. Johnson,* 632 F.3d 912, 930 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 135 (2011).