**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

United States,                          :
                                        :
                                        :     Case no. 2:11-cr-097
            v.                          :
                                        :
CORY LOTT,                              :
                                        :
                  Defendant.    :

## Memorandum Opinion and Order:
## Defendant's Renewed Motion to Dismiss the Indictment

On August 6, 2012, Defendant Cory Lott pleaded guilty to an

Indictment charging him with knowing failure to register and

update his registration as a sex offender in Vermont, in

violation the Sex Offender Registration and Notification Act

("SORNA" or the "Act"), 18 U.S.C. § 2250(a).  Indictment, ECF

No. 3; Plea Agreement, ECF No. 50.  Lott's obligation to

register under SORNA arose from a 2001 conviction in New York

for sexual abuse in the second degree.  *See* Aff. of Michael

Barron, Crim. Compl. Attach. 1, ECF No. 1-1, at *1-2.  Prior to

pleading guilty, Lott sought to dismiss the Indictment, arguing,

among other things, that Congress did not have authority under

the Commerce Clause to enact SORNA.  On June 6, 2012, this Court

issued a Memorandum Opinion and Order rejecting Lott's arguments

on the grounds that they were expressly foreclosed by Second

Circuit case law.  ECF No. 31 at *4 (citing *United States v.*

*Guzman*, 591 F.3d 83 (2d Cir. 2010), *as amended,* (Jan. 8, 2010),

*cert. denied*, 130 S. Ct. 3487 (2010)).  On July 31, 2012, Lott renewed his motion to dismiss the Indictment in light of the Supreme Court's recent opinion in *National Federation of Independent Businesses v. Sebelius*, 132 S.Ct. 2566 (2012) (hereinafter "*NFIB*"), which addressed the scope of Congress's authority under the Commerce Clause.[1]  For the reasons described below, the Court **denies** Lott's motion.

## Background

Lott challenges two components of SORNA: a registration requirement, 42 U.S.C. § 16913, and a criminal enforcement provision, 18 U.S.C. § 2250(a).[2]

Section 16913 provides that anyone convicted of a sex offense "shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16913(a).  A sex offender must register before the completion of an incarcerative sentence or within three days of receiving a non-incarcerative sentence.  *Id.* § 16913(b).  And within three days of each subsequent "change of name, residence, employment, or student status," a sex offender must "appear in person in at least 1 jurisdiction involved . . . and inform that

---

[1] In his Plea Agreement, Lott reserved the right to continue pursuing his Commerce Clause challenge of SORNA before this Court.  ECF No. 50 ¶ 14.

[2] Both were enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587.

jurisdiction of all changes in the information required for that offender in the sex offender registry." *Id.* § 16913(c). The registration requirement applies to any sex offense—state, federal, or local—that falls within the definition at section 16911(5).

Section 2250(a) criminalizes the knowing failure to register or update one's registration required by SORNA, but only in cases where there is a federal jurisdictional nexus. Accordingly, when it is prosecuting an individual under the Act, the Government must show that the individual charged is sex offender under SORNA due to a federal conviction or that the individual travelled in interstate or foreign commerce. 18 U.S.C. § 2250(a)(2). Although section 2250(a) "is plainly aimed at ensuring that sex offenders register and update previous registrations when moving among jurisdictions," *United States v. Whaley*, 577 F.3d 254, 259 (5th Cir. 2009), it does not apply to any individual who is a sex offender under SORNA because of a state crime and does not leave that jurisdiction. Enforcement of purely intrastate noncompliance with the registration requirement is left to—or, more accurately, required of—the states.[3]

---

[3] *See* 42 U.S.C. 16913(e) (requiring states to "provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply" with the registration requirement); 42 U.S.C. § 16925 (providing that states which fail to comply substantially with SORNA will receive a reduced

3

**Discussion**

This case requires the Court to consider whether the Supreme Court's decision in *NFIB*, 132 S.Ct. 2566 (2012) effectively overrules *Guzman*.[4]  In *Guzman*, the Second Circuit determined that SORNA's registration requirement and criminal enforcement provisions were valid exercises of Congress's authority under the Commerce Clause and the Necessary and Proper Clause.[5]  591 F.3d at 89-91.  Lott argues that *NFIB* precludes Congress from compelling activity or regulating inactivity pursuant to its Commerce Clause power and that Congress

---

allocation of federal law enforcement funds).  According to the Department of Justice seventeen states have been found to have substantially implemented SORNA.  *See* The Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, *SORNA*, (Dec. 4, 2012, 3:24 PM), http://www.ojp.usdoj.gov/smart/sorna.htm.

[4] The Court is aware of only one other case confronting the impact of *NFIB* on a prior circuit court decision upholding SORNA against a Commerce Clause challenge, *see United States v. Moore*, No. 12-CR-6023, 2012 WL 3780343 (E.D. Wash. Aug. 31, 2012); however, the District Court's opinion in that case does not fully address the issues raised by Lott.

[5] Every other circuit that has examined the issue has reached the same conclusion.  *See United States v. Parks*, 698 F.3d 1, 6-7 (1st Cir. 2012) (reaffirming the commerce clause portion of *United States v. DiTomasso*, 621 F.3d 17 (1st Cir. 2010), *vacated,* 132 S.Ct. 1533 (2012)); *United States v. Pendleton*, 636 F.3d 78, 86-88 (3d Cir. 2011); *Gould*, 569 F.3d at 470-72 (4th Cir. 2009) (considering the registration and enforcement provisions separately and upholding both); *Whaley*, 577 F.3d at 258-61 (5th Cir. 2009); *United States v. Coleman*, 675 F.3d 615, 619-21 (6th Cir. 2012); *United States v. Vasquez*, 611 F.3d 325, 329-31 (7th Cir. 2010); *United States v. Howell*, 552 F.3d 709 (8th Cir. 2009) (upholding the registration requirement and noting its previous decision in *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008) upholding the enforcement provision); *United States v. George*, 625 F.3d 1124, 1129-30 (9th Cir. 2010), *vacated on other grounds*, 672 F.3d 1126 (9th Cir. 2012).

therefore may not require sex offenders to register or punish them for failure to do so.

In *United States v. Lopez*, the Supreme Court "identified three broad categories of activity that Congress may regulate under its commerce power." 514 U.S. 549, 558 (1995). The Commerce Clause empowers Congress: (1) "[to] regulate the use of the channels of interstate commerce"; (2) "to regulate and protect the instrumentalities of interstate commerce, or persons or thing in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *Id.* at 558-59 (internal citations omitted). The Supreme Court entertain four further considerations to determine whether a regulation was valid under the third category: "(1) whether the regulated activity is economic in nature; (2) whether the statute contains an 'express jurisdictional element' linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) attenuation of the link between regulated activity and interstate commerce." *Guzman*, 591 F.3d at 89-90 (quoting *United States v. Morrison*, 529 U.S. 598, 611-21 (2000)).

## I.    The Criminal Enforcement Provision[6]

When it upheld the criminal enforcement provision of SORNA, 18 U.S.C. § 2250(a), the Second Circuit relied on the first two prongs of *Lopez*: the authority "[to] regulate the use of the channels of interstate commerce" and the authority "to regulate and protect the instrumentalities of interstate commerce, or persons or thing in interstate commerce." *Guzman*, 591 F.3d at 89 (quoting *Lopez*, 514 U.S. at 588-89).  Section 2250(a), the Second Circuit explained, contains a clear jurisdictional predicate—either a conviction under federal law or travel in interstate commerce. *Id.* at 90 ("These requirements stand in clear contrast to the lack of a jurisdictional predicate in the statutes at issue in *Lopez* and *Morrison* and are clearly intended to provide a jurisdictional nexus.").  Thus, the Second Circuit had little difficulty concluding that Section 2250(a) was a legitimate exercise of Congress's Commerce Clause authority. *Id.; accord United States v. Gould*, 568 F.3d 459, 470-72 (4th Cir. 2009) (concluding that section 2250 is valid under the first two *Lopez* prongs); *United States v. Ambert*, 561 F.3d 1202,

---

[6] Following the Second Circuit's example in *Guzman*, the Court addresses the validity of those two provisions separately. *See* 591 F.3d at 89-91.  Other Circuits have also addressed the constitutionality of the registration and enforcement provisions separately. *See, e.g., United States v. Howell*, 552 F.3d 709, 713 (8th Cir. 2009) ("Although counsel for the government suggested at oral argument [*United States v. ]May*[, 535 F.3d 912, 921-22 (8th Cir. 2008)] also upheld § 16913 under the commerce clause, we disagree.  *May* only determined the constitutionality of § 2250.").

1210 (11th Cir. 2009) ("Section 2250 is a proper regulation falling under either of the first two *Lopez* categories because it regulates both the use of channels of interstate commerce and the instrumentalities of interstate commerce."); *Whaley*, 577 F.3d at 258 ("Through § 2250, Congress has forbidden sex offenders from using the channels of interstate commerce to evade their registration requirements, and we have no doubt that it was within its power under the Commerce Clause to do so.").

No portion of the Supreme Court's decision in *NFIB* casts doubt on the ability of Congress to regulate the channels or instrumentalities of interstate commerce. Instead, in *NFIB*, the validity of the individual mandate under the Commerce Clause rested solely on the question of whether it fell within the third category identified in *Lopez*: Congress's authority "to regulate those activities having a substantial relation to interstate commerce." *See NFIB*, 132 S.Ct. at 2585 (Roberts, C.J., concurring) ("The Government contends that the individual mandate is within Congress's power because the failure to purchase insurance has a substantial and deleterious effect on interstate commerce by creating the cost-shifting problem.") (internal quotation omitted); *see also id.* at 2617 (Ginsburg, J., concurring in part and dissenting in part) ("Beyond dispute, Congress had a rational basis for concluding that the uninsured, as a class, substantially affect interstate commerce."); *id.* at

2647-48 (Scalia, Kennedy, Thomas, Alito JJ., dissenting) (rejecting the Government's defense that the individual mandate was necessary to a complicated regulatory scheme or as a regulation of activities that substantially affect interstate commerce).  As *NFIB* does not undermine *Guzman*'s rationale for upholding the criminal enforcement provision of SORNA, this Court sees no reason to question the continued validity of that portion of the Second Circuit's decision.

## II.  The Registration Requirement

Before addressing the legal merits of Lott's argument, the Court must first determine whether he has standing to challenge the registration requirement.

### A.  Lott's Standing to Challenge the Registration Requirement

The Government argues that Lott does not have standing to challenge the registration requirement, 42 U.S.C. § 16913, because he is only being charged under the criminal enforcement provision, 18 U.S.C. § 2250(a).  In response, Lott contends that since the section 16913 registration requirement is a predicate for prosecution under section 2250(a), he has standing to challenge the facial constitutionality of that provision as well.

While it is true that facial challenges are generally disfavored, *see Sabri v. United States*, 541 U.S. 600, 609

(2004), there is little doubt that a federal defendant may challenge Congress's authority to enact the statute under which he is being charged. *See, e.g. Lopez*, 514 U.S. at 551 (invalidating the provision of the Gun Free School Zones Act of 1990 that criminalized the knowing possession of a firearm in a school zone). The fact that the criminal enforcement provision is distinct from the registration requirement does not deprive Lott of standing for two reasons. First, Lott was subject to the registration requirement prior to his moving in interstate commerce and prior to the criminal action against him. By subsequently travelling in interstate commerce, Lott does not forfeit the right to challenge his preexisting duty to register under section 16913. *See United States v. Guzman*, 582 F. Supp. 2d 305, 314-15 (N.D.N.Y. 2008) ("The fact that the defendant travelled in interstate commerce does not render his duty to register under § 16913, both before he travelled in interstate commerce and afterwards, within the powers vested to Congress under the Constitution."), *rev'd on other grounds*, 591 F.3d at 91 (reaching the merits of the defendant's Commerce Clause challenge without specifically addressing the standing issue). Second, the criminal enforcement provision incorporates that registration requirement as an element of the offense. Congress cannot deprive defendants of the opportunity to challenge the statutory provisions underlying their conviction simply by

mandating certain conduct in one provision while enforcing it under another.  Ruling otherwise would exalt form over substance.  *C.f. Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 345 (1977).

Lott has standing to challenge the registration requirement.  The Court therefore turns to the merits of his challenge to that provision and the portion of *Guzman* upholding it.

### B.    The Registration Requirement and *NFIB*

In *Guzman*, the Second Circuit upheld section 16913 as a valid exercise of Congress's power under both the Commerce Clause and the Necessary and Proper Clause.[7]  Unlike the criminal enforcement provision, the registration requirement contains no jurisdictional element placing it within the first or second prongs of *Lopez*; however, the Second Circuit found that it was valid under the third prong, a regulation of intrastate activity that has a substantial effect on interstate commerce.  Acknowledging that the registration requirement regulated some purely intrastate activity, the Second Circuit determined that Congress's goal of establishing a national system for the

---

[7] The Second Circuit recognized that the registration and criminal enforcement provisions were "'clearly complementary: without § 2250, § 16913 lacks federal criminal enforcement, and without § 16913, § 2250 has no substance.'"  *Guzman*, 591 F.3d at 90. (quoting *Whaley*, 577 F.3d at 259 (internal citations omitted)).  Nonetheless, the Second Circuit found it necessary to address the constitutionality of each provision separately.  This Memorandum Opinion and Order adopts the same approach.

registration of sex offenders was not possible without a registration requirement that operated intrastate as well as interstate. *See Guzman*, 591 F.3d at 91 (citing 42 U.S.C. § 16901). "To the extent that § 16913 regulates solely intrastate activity," the Second Circuit explained, "its means are reasonably adapted to the attainment of a legitimate end under the commerce power and therefore proper." *Guzman*, 591 F.3d at 91 (internal citations and quotations omitted) (quoting *Raich*, 535 U.S. at 37 (Scalia, J., concurring)). The Court also relied heavily on Justice Scalia's concurrence in *Gonzales v. Raich*, which explained:` "Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce." 545 U.S. 1, 35 (2005) (Scalia, J., concurring).

To determine whether this rationale survives *NFIB*, the Court must first identify what components of that opinion are binding. A clear majority of the Justices in *NFIB* joined the portions of Chief Justice Roberts's opinion concluding that the Anti-Injunction Act did not bar a pre-enforcement suit, holding that the individual mandate could be reasonably construed as a tax that was within Congress's Taxing powers, and striking a statutory provision giving the Secretary of Health and Human Services the authority to penalize states that chose not to

participate in the expansion of Medicaid, *see NFIB*, 132 S.Ct. at 2577; however, on the question of whether the individual mandate exceeded Congress's authority under the Commerce Clause, the Court issued three separate opinions.  Writing only for himself, Chief Justice Roberts determined that the individual mandate was not a valid exercise of Congress's Commerce Clause power because Congress may not use that power to compel individuals to engage in activity;  Justices Scalia, Kennedy, Thomas, and Alito authored a joint dissent reaching the same conclusion with respect to the Commerce Clause; and Justice Ginsburg penned a concurrence joined by three Justices that would have upheld the individual mandate on the Commerce Clause.

Lott suggests that this Court may read the joint dissenting opinion along with the portion of Chief Justice Roberts's opinion as establishing a five-justice majority on the Commerce Clause issue.  But the Supreme Court has explained that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"  *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).  Under *Marks*, this Court therefore cannot "read the conglomeration of the

dissenting opinion of four Justices combined with the concurring opinion of Chief Justice John Roberts to constitute binding precedent interpreting the Commerce Clause . . . ." *United States v. Moore*, No. 12-CR-6023, 2012 WL 3780343 (E.D. Wash. Aug. 31, 2012); *accord United States v. Spann*, No. 12-CR-126, 2012 WL 4341799 (N.D. Tex. Sept. 24, 2012). Instead, this Court must apply Chief Justice Roberts's opinion because it articulates the narrowest grounds for upholding the individual mandate.[8]

In his opinion, the Chief Justice acknowledged that the Commerce Clause permits Congress to regulate intrastate activities that have a substantial effect on interstate commerce but held that Congress may not regulate economic activity by compelling it. *NFIB*, 132 S.Ct. at 2587 ("Our precedents

---

[8] In her concurrence, Justice Ginsburg questioned the need for the Chief Justice to address the Commerce Clause issue his opinion, given that five Justices agreed that the mandate could be upheld under Congress's power to tax and spend. *See NFIB*, 132 S. Ct. at 2629 (Ginsburg, J., concurring) ("I see no reason to undertake a Commerce Clause analysis that is not outcome determinative."). Chief Justice Roberts flatly rejected that contention at the end of his discussion of the individual mandate:

> It is only because the Commerce Clause does not authorize such a command that it is necessary to reach the taxing power question. And it is only because we have a duty to construe a statute to save it, if fairly possible, that § 5000A can be interpreted as a tax. Without deciding the Commerce Clause question, I would find no basis to adopt such a saving construction.

*NFIB*, 132 S. Ct. at 2600-01 (Roberts, C.J., opinion). Accordingly, the entirety of the Chief Judge's opinion, including the portions that address the Commerce Clause, is binding on this Court.

recognize Congress's power to regulate classes of *activities*,
not classes of *individuals*, apart from any activity in which
they are engaged.") (internal quotation and citation omitted);
*Id.* at 2586 ("The power to *regulate* commerce presupposes the
existence of commercial activity to be regulated.")(emphasis in
original).  Recognition of that principle in *NFIB* meant that the
individual mandate could not be upheld under the Commerce
Clause:

> The individual mandate . . . does not regulate existing
> commercial activity.  It instead compels individuals to
> *become* active in commerce by purchasing a product, on the
> ground that their failure to do so affects interstate
> commerce.  Construing the Commerce Clause to permit
> Congress to regulate individuals precisely *because* they are
> doing nothing would open a new and potentially vast domain
> to congressional authority.  Every day individuals do not
> do an infinite number of things.  In some cases they simply
> fail to do it.  Allowing Congress to justify federal
> regulation by pointing to the effect of inaction on
> commerce would bring countless decisions an individual
> could *potentially* make within the scope of federal
> regulation, and—under the Government's theory—empower
> Congress to make those decisions for him.

*Id.* at 2587 (emphasis in original).  Since "[t]he individual
mandate forces individuals into commerce precisely because they
elected to refrain from commercial activity" it "cannot be
sustained under a clause authorizing Congress to 'regulate
Commerce.'"  *Id.* at 2591.

The Chief Justice also determined that the individual
mandate could not be sustained under the Necessary and Proper
Clause as "an integral part of a comprehensive scheme of

14

economic regulation." *Id.* (internal quotation omitted). The
Government argued that the Court did not have to consider the
effect of inactivity on interstate commerce because it was
sufficient that Congress regulated commercial activity—namely
the other provisions of the Patient Protection and Affordable
Care Act—in a manner that required the government to regulate
inactivity. *See Raich*, 545 U.S. at 22 (upholding Congress's
authority to regulate intrastate production and consumption of
marijuana as a necessary and proper extension of Congress's
authority to regulate the interstate market for the drug).
Roberts rejected this argument as well. *Id.* at 2592-93. The
Chief Judge distinguished *Raich* on the grounds that the issue
presented there only concerned the constitutionality of
"individual applications of a concededly valid statutory
scheme," *id.* at 2593 (quoting *Raich*, 545 U.S. at 23), whereas
"[t]he individual mandate . . . vests Congress with the
extraordinary ability to create the necessary predicate to the
exercise of an enumerated power." *Id.* at 2592.

The Chief Justice's opinion raises a number of vexing legal
questions. Foremost among them is determining what remains of
*Raich* after *NFIB*. The Chief Justice's opinion left intact
*Raich*'s key holding: that Congress may regulate economic
intrastate activity when doing so is a necessary component of a
comprehensive interstate regulation. *Raich*, 545 U.S. at 22

(2005) ("[W]hen it enacted comprehensive legislation to regulate the interstate market in a fungible commodity, Congress was acting well within its authority to 'make all Laws which shall be necessary and proper" to "regulate Commerce . . . among the several States.') (quoting U.S. Const., art. I, § 8). Nonetheless, the Chief Justice's opinion in *NFIB* could be read as limiting *Raich* to the relatively narrow circumstance in which Congress is attempting to regulate commodities, the intrastate production and consumption of which necessarily impact the interstate market. *See NFIB*, 132 S.Ct. at 1592 (Roberts, C.J. opinion) ("[In *Raich* w]e denied any exemption, on the ground that marijuana is a fungible commodity, so that any marijuana could be readily diverted into the interstate market. Congress's attempt to regulate the interstate market for marijuana would therefore have been substantially undercut if it could not also regulate intrastate possession and consumption.").

Alternatively, the Chief Justice's opinion could be read to suggest that although regulation of intrastate activity may sometimes be *necessary* for the implementation of comprehensive interstate regulation, it is not *proper* when that regulation takes the form of compelled activity. *Id*. ("Even if the individual mandate is "necessary" to the Act's insurance reforms, such an expansion of federal power is not a "proper"

means for making those reforms effective."). By this view, even when Congress can demonstrate that a particular regulation will not function unless it operates both intra and interstate, the Commerce Clause does not authorize Congress to compel individuals to engage in intrastate activity. *Id.* Given that the distinction between activity and inactivity features prominently in the Chief Justice's opinion, the latter interpretation may be better way to read *NFIB* in conjunction with *Raich*. *See NFIB*, 132 S.Ct. at 2590 ("If the individual mandate is targeted at a class, it is a class whose commercial inactivity rather than activity is its defining feature."); *id.* at 2591 ("The Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions.").

The trouble, though, is that the Chief Justice's opinion provides little guidance as to how lower courts should distinguish between activity and inactivity or between regulating activity and compelling it. For example, it is unclear what level of generality this Court should adopt in deciding whether Congress is compelling activity or regulating individuals who are already active. *See Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 560 (6th Cir. 2011) (Sutton, J. concurring) *cert. denied*, 133 S. Ct. 61 (U.S. 2012) *and abrogated by NFIB*, 132 S. Ct. 2566 (2012) ("Level of generality is destiny in

interpretive disputes, and it remains unclear at what level plaintiffs mean to pitch their action/inaction line of constitutional authority or indeed whether a workable level exists.").

Nor does grounding the activity/inactivity distinction in the facts of this case provide any more clarity. On the one hand, by enacting SORNA, Congress did not require all individuals to register; rather, it defined a class of individuals whose past conduct justified the requirement that they register. While it is true that the act of registering is an affirmative one, it is a requirement that only attaches to individuals who engaged in activities—namely sex offenses—that are in no sense compelled.

Yet it is also possible to construe the registration requirement as a close analog to the obligation to purchase health insurance. With both the sex offender registry and the individual mandate, Congress is arguably "creat[ing] the necessary predicate to the exercise of an enumerated power." *NFIB*, 132 S.Ct. at 2592. If Chief Justice Robert's opinion stands for the proposition that Congress may not regulate the failure to take an affirmative act, then it is not self-evident how requiring individuals to register is different from requiring individuals to purchase insurance.

Moreover, the suggestion that Congress has authority to
compel intrastate sex offenders to register is subject to a much
more basic criticism: the underlying activity Congress is
regulating is not economic. An important assumption of the
activity/inactivity discussion in *NFIB* as well as several of the
Supreme Court's other Commerce Clause decisions is that Congress
may only regulate conduct that is actually economic in nature.
*See Morrison*, 529 U.S. 598 (finding that violence against women
had little connection to the regulation of economic activity);
*Lopez*, 514 U.S. 1 (holding Congress did not have authority to
regulate gun possession without any jurisdictional hook in part
because it was not economic activity); *Raich*, 545 U.S. 1
(marijuana production and consumption); *Wickard v. Filburn*, 317
U.S. 11 (1942) (upholding Congress's power to regulate wheat
production). Unlike the activities at issue in *Wickard*, *Raich*,
and *NFIB*, the status of being a sex offender has a weak
relationship to economic activity of any kind, and in fact seems
much more analogous to the activity the Supreme Court found to
be noneconomic in *Lopez* and *Morrison*. Given that the Supreme
Court has "upheld Commerce Clause regulation of intrastate
activity only where that activity is economic in nature",
*Morrison*, 529 U.S. at 613, the fact that sex offenses only have
an attenuated connection to economic activity further suggests
that the registration requirement skirts the limits of

Congress's authority under the Commerce Clause and Necessary and Proper Clause. *See NFIB*, 132 S.Ct. at 2623 (Ginsburg, J., concurring) (even without the activity/inactivity limitation, "Congress would remain unable to regulate noneconomic conduct that has only an attenuated effect on interstate commerce and is traditionally left to state law.") (citing *Lopez*, 514 U.S. at 567; *Morrison* 529 U.S. at 617-19). From this perspective, the claim that Congress has authority under the Commerce Clause to compel activity that is noneconomic—such as the registration of intrastate sex offenders—would seem considerably more suspect than the claim that it has the power to compel economic activity.

Ultimately, though, this Court must apply *Guzman. Guzman* was not abrogated in *NFIB* and therefore remains binding in the Second Circuit*.* Critical to the conclusion is the fact that Chief Justice's opinion distinguished but did not overrule *Gonzales v. Raich*, the principal case on which *Guzman* relied. Even after *NFIB*, Congress has the power to regulate intrastate activity when doing so is incidental to comprehensive legislation regulating interstate activity. *See NFIB*, 132 S.Ct. at 2592 ("Congress's attempt to regulate the interstate market for marijuana would therefore have been substantially undercut if it could not also regulate intrastate possession and consumption.") (citing *Raich*, 545 U.S. at 19). To the extent

that SORNA regulates purely intrastate activity, it is for the purpose of establishing a comprehensive national system for the registration of sex offenders.  *See Guzman*, 591 F.3d at 91 ("[W]ith SORNA, Congress's goal was not simply to require sex offender to register or to penalize the failure to do so, but rather to 'establish[] a comprehensive national system for the registration of those offenders.'")(quoting 42 U.S.C. § 16901). Consequently, the application of the registration requirement intrastate is a valid exercise of Congress's authority under the Commerce and Necessary and Proper Clauses.  In the language of *NFIB*, the registration requirement does not "involve the exercise of any 'great substantive and independent power,'" *NFIB*, 132 S.Ct. at 2593 (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 411 (1819)); rather, it is a necessary and proper extension of Congress's Commerce Clause authority to regulate federal and interstate sex offenders.

## Conclusion

For the foregoing reasons, Lott's renewed motion to dismiss is denied.

Dated at Burlington, in the District of Vermont, this 10th day of December, 2012.


/s/_William K. Sessions III_
William K. Sessions III
U.S. District Court Judge